24-3491 Western Arkansas, Bradley Bolin v. Deputy Landon Wilkins et al. May it please the Court, Your Honors. My name is Jason. Mr. Owens, we'll hear from you first. You may proceed. Thank you, Your Honor. My name is Jason Owens. I represent four appellants in this case, current or former jailers at the Benton County Jail in Bentonville, Arkansas. These appellants were four of 21 defendants. Below 17 of those were dismissed on summary judgment, leaving six discreet excessive force claims against these four officers. At the outset, I'd like to speak to two pervasive legal errors that the District Court made in resolving the summary judgment motion and the qualified immunity defense here. First, that it credited the testimony of the plaintiff, Mr. Bolin, despite his repeated testimony, sworn testimony, that he couldn't remember anything from the day in question. Secondly, the District Court credited video in a couple of circumstances where it expressly found that the video was inconclusive in violation of Scott v. Harris and its progeny, which say that video and other records can only be used in those circumstances where they blatantly contradict the account of one of two combatants in a genuine factual dispute. That wasn't the case here. Say that again? You're saying that if there's an inconclusive video and one witness claims something happened, then it's not a jury question as to what happened? No, I think what Scott v. Harris says is that where the video or, in other cases, medical records and those kinds of things blatantly contradict the account of one of two sides in a factual dispute, the court is then free to disregard the testimony of that person. That's not what happened here. What happened here was, in particular, in the claim out of the booking lobby against Appellant Bolin. I know that's not what happened here, but I thought you just said your position is, because the video is ambiguous, the court must accept the testimony of your client. That's correct, Your Honor. Why? Why couldn't the jury disbelieve your client and say there's no video that is conclusive? Well, so the factual situation, and I'll speak to the booking lobby because I think this is where this issue comes up most importantly. In that claim, Appellant Loya was denied term of judgment and qualified immunity related to two episodes where he tased Mr. Bolin after he was on the ground, but he was resisting and wouldn't give his hands up to be handcuffed. We've got audio that shows he warned before he did that Mr. Bolin invited him to do it verbally. But the video is from the ceiling and facing down, and so you've got seven officers on top of him. Well, on that one you've got some other evidence. It's not just the one witness. Well, the other evidence is all of the officers saying that Mr. Bolin was vigorously resisting and not complying with the orders. You've also got him saying, go ahead and tase me or something. He did. On an audio recording he said, do it as many effing times as you want to. So that's more than what you were suggesting. It's not just inconclusive video and one witness. Well, certainly that inconclusive video can't turn an otherwise indisputable fact. Because here in that claim, all of the officers testified to his vigorous resistance and unwillingness to obey commands. There were essentially three categories of force claims here. Two involving knee strikes by two separate appellants. Several involving the use of taser and pepper spray. And then the third involving a takedown by one of the officers. The two knee strike cases, the district court actually didn't cite any cases that have held that knee strikes of that variety have ever been held to violate the constitutional rights of a detainee under any circumstances. And of course, this court has a long line of cases deriving from the Supreme Court that the minimalist uses of force do not violate the Fourth Amendment at all. And that's particularly true where, as with these knee strikes, no injury occurred. There was simply no case cited by the district court that said, and on both of those occasions, they were trying to get the plaintiff who had been fighting into the cell, and he wouldn't go down to his knees so that they could safely retreat out of the cell, and they had to strike him in the leg with their knees. Again, those actions have never been held unconstitutional to my knowledge by this circuit, certainly under those facts. Neither the district court nor the plaintiff below or on appeal have cited any cases to the contrary. I don't believe there are any. How about the pepper spray balls? So the pepper spray and taser… Well, let's just talk about the…I believe there were four pepper spray balls… That was a claim against… …deployed by a lawyer as he backed out of the cell. Am I remembering this right? That's correct. What are your thoughts on that one? Well, that's the second use of force claim against an appellant lawyer after they had fought with Mr. Bowen in the booking lobby, and that was after he had fought with the officers who arrested him from another agency and was charged with battery on a police officer. He was taken to the cell, and as is their custom, and as far as I know the custom of every jail and prison in the United States, he was taken to the far side of the cell, told to go down to his knees and face the wall until he heard the door shut. That's to give them time, if he decides to turn around, give them time to back up and prepare themselves if he wants to fight. That's exactly what he did. He stood up. The district court notes the distance as six feet, seemingly as though that's some vast distance. Your honors are sitting about six feet from one another. That's not a far distance if someone wants to lunge at someone else. And he warned him not to do it, and that's undisputed. Warned him to turn around and get back down on his knees, and if he didn't, he would be tased. And the court found that problematic. And both on the pepper spray and the taser cases, the court cites to several cases. Let's just stick with the pepper spray. What's the justification for the firing of the four balls if the guy wasn't advancing on you? Well, it's a safety and security issue, and of course that's the concern that this court has said is the highest concern in any jail or prison. And when he turns around, there's only one meaning there. When he refuses to obey that command, and the district court cited cases about refusal to obey commands. But they're so different from this case that they couldn't provide reasonable notice here. Because, of course, commands can be very different. One of the commands in the treats case that was cited by the district court was the command to take this copy of a form you just signed. And when he wouldn't, he was pepper sprayed in the face. That's so different from this case where they're trying to effectuate safety and security and retreat from the cell so that he can calm down. Well, when I looked at the video, it looked like everybody was out of that cell at the point that the pepper balls were fired, except for Officer Loya. And Officer Loya was standing like half a step inside the door, half a step outside the door. And all he needed to do was step back one half step and pull the door shut. Maybe, Your Honor. I would posit another possibility there. One is that from six feet away, if you wanted to lunge at him, he probably could have reached him. The other point is, those are heavy steel doors that close completely. And so if he lunges at him and he backs up and pulls that door too and he gets an arm in there, he's going to severely injure him, if not sever the arm entirely. What about after the first pepper shot, didn't the guy turn? Didn't Boland turn? My understanding from the video and the testimony was that he turned his back on the first pepper spray and it hit him in the back. So then why fire three more if he's no longer even facing the officer? Essentially it didn't affect him and he turned back around. And so he gets hit in the back on the first round, it doesn't affect him, he turns back around instead of getting down on his knees or giving up or evading. What do you mean by turns back around? He turns to face the back of the cell? Well, when he saw that the pepper spray was about to be fired, he turned his back and got hit in the back instead of in the eyes where it really affects you or the mouth. And after he got hit with that first round, he turned back around. Again signaling, I want to fight. And so he was pepper sprayed again and then the retreat occurred. So the lawyer couldn't get out of the cell safely when he turned his back to the cell door so as not to be hit by the first ball? That didn't give the lawyer a chance to retreat and close because the door is too heavy? Is that your position? Well, these are the kind of split second decisions that I don't think this court has overrode jail officials, jail staff in these kind of cases. It's different when, like in Smith and Edwards, the cases cited by the district court. In those cases, the detainee was already in the cell and they enter into the cell and start the episode. Here, you've got an uncontrolled inmate that you just had a big fight with. You're taking the handcuffs off him and he immediately hops up disobeying the commands. And that's clear from the video, despite the crediting that the district court gave him about not disobeying any commands. It's clear that he did disobey the command there. He stood up in a way that can signal only one thing to these officers and that's that he's ready to fight. He's about to lunge at me. He's worn and he's sprayed. There's just no cases that say that those kind of safety and security centric commands give way to liability. Or at least that there's any reasonable notice in those cases. As opposed to the cases where you pepper spray somebody through the bean hole door because they won't sweep their cell. Or like in the Treats case, they won't accept a piece of paper from you and so you pepper spray them in the face. That's not this case. This case is an officer who offers undisputed testimony about an earnest concern for his safety and for the detainee's safety. And you can see how little it affected the detainee on the video. After he closes the door, he walks up and he's trying to get people's attention. He barely rubs one eye. It didn't seem to affect him at all. And that's true sometimes, particularly depending on what was ingested before they came into the jail. Sometimes those implements have less effect on someone than other times. Mr. Owens, this is what I hear the argument that you're making and that you briefed to be. It's an argument that the district court should not have found genuine disputes of material fact where it did because the record, factual record, doesn't support Mr. Boland's claims. And if Mr. Boland's version or if the jailer's version of events is treated as undisputed, then their use of force did not violate Boland's clearly established rights. That's the argument I hear you making. And that's the kind of argument that we've repeatedly said we have no jurisdiction to consider in an interlocutory appeal such as this. We've said time and time again these appeals involve only issues of law. Sure. The result, you've been talking about what the video shows and what the testimony was, and those are things we're not even supposed to get into. We're just supposed to look at the order from the district judge and the district judge's findings of fact and determine whether as a matter of law a constitutional violation is made out and whether it's clearly established. So what's your response to am I misguided there? Respectfully, Your Honor, I think so, and it may be my fault for lack of clarity, but let me try to be clear. What we're arguing is that errors of law were made. This court has repeatedly held that testimony cannot be considered on summary judgment where it contradicts other sworn testimony from the same individual. In fact, this court has held that even where it contradicts that party's expert witness's testimony in the Cole case, much broader than what we're advocating for here. This court and the Supreme Court have also held that video testimony cannot create a material question of fact where it doesn't blatantly contradict the account given by someone in the case, which is the case here particularly in the booking lobby. Does this mean that every time that you beat somebody senseless and they can't tell you what happened, and the video might show that the beating was one-sided and mostly uncontested, because the witness can't tell you what happened, that you just got to accept what the officers say? No, I think there are all sorts of ways to marshal evidence in those kind of cases. We deal with those all the time in decedents of state cases where the person is no longer with us to testify about that. And there are all sorts of ways to marshal evidence through expert testimony and otherwise. That simply isn't the case here. And what we end up talking about is not about the genuineness of any factual dispute on Judge Shepard's point, but the materiality, which is, this court has repeatedly held a question of law. And I think those cases that we've cited stand for the proposition that contradictory testimony and ambiguous video do not create material questions of fact on summary judgment. All right. Your time has expired. Thank you for your argument. Mr. Boris, we'll hear from you. Thank you. May it please the Court. John Bors for Bradley Bowlin. Your Honors, I believe the appellants misinterpret Scott and Cole. And I just kind of want to go through that briefly. I agree with Judge Shepard that the court is not here to decide today issues of fact. And to the extent appellants believe somehow the lower court credited improper testimony, let me discuss briefly what Cole and Scott discuss. Cole was a breach of contract case. And in that case, Cole's testimony, sworn testimony before trial, was that he didn't know what the damages would be. He was relying on an expert report. Ultimately, that expert report was excluded from evidence. And so he submitted affidavits on what those damages were. And Cole basically said, you can't fabricate evidence at a later point in time to survive summary judgment. Not what we have here. Mr. Bowlin was deposed. He was subject to cross-examine of opposing counsel and the appellants. And those questions were asked of him. He said, I didn't refuse officers. I complied with the officers. And I don't remember a lot of what happened. Those are questions of credibility, which the lower court correctly identified. And those are questions of fact for the jury. So Cole is inapplicable in that situation. As it relates to Scott, and I believe Chief Judge Colleton is correct on this, in questioning appellants' position on Scott. Scott says that when video evidence blatantly contradicts sworn testimony to the extent a reasonable jury could not believe that testimony, then that testimony should not be used for purposes of surviving summary judgment. That's not what the lower court did here. The lower court said throughout that Mr. Bowlin maintains that he did not resist and he complied. It reviewed video evidence to see if that testimony was blatantly contradicted and found that video evidence inconclusive to some extent. However, notably, if it found it blatantly contradictory, it found it blatantly contradicted the officer's testimony. When the lower court said a reasonable jury could conclude from watching this video that Mr. Bowlin did not resist and did comply, which would blatantly contradict what the officers were saying. So to that respect, under the appellant's argument, the video would be included for that purpose. What this court is here to determine is was there a violation of a constitutional right and was it clearly established at that time? In the cases that Mr. Bowlin cites throughout his brief clearly show each one of these instances was a violation of a right that was clearly established. I want to break it up by officers, if I may. I want to start with Deputy Loya because he was involved in three incidences. The very first incident was at the booking lobby. And I'd ask all of the judges to remember when they watch this video, as far as any argument about a security risk, let's first ask ourselves, when did this situation become violent, if it became violent at all? When was force first used to make this a heightened situation? And I would argue to the court it was used when 12 officers packed into a booking room, tackled, and took to the ground Mr. Bowlin, who was handcuffed at the time with handcuffs behind his back. That's how this situation started. And Deputy Loya was involved in that. It began at 110 a.m. Mr. Deputy Loya, he used two five-second taser drive stun to Bowlin's back while he was laying prone on the floor, handcuffed, not resisting or posing a security risk. Mind you, the jury gets the opportunity, and this court should do the same, to review the video evidence and that all of the evidence of the record, in the light most favorable to the non-moving party, which is Mr. Bowlin. That's outlined in the Johnson case. So the first stun was at 110. The second stun was six seconds later. This is an issue because it comes up again when we hit Mr. Bowlin in the face, when Mr. Loya shoots, deploys his JPX pepper ball gun, four times in six seconds. So there's not even a time to understand, was the force being used accomplishing anything? So two stuns were done. The situation, Bowlin entered the lobby, handcuffed, hands behind his back, was compliant for several minutes. Bowlin was standing with his back to the wall, hands behind his back. At 110 and 18 seconds, officers slammed Bowlin to the floor, despite no apparent signs of resisting or aggression. He was lying face down on the floor, handcuffed, not resisting or posing a security risk, when Loya proceeded to stun him not once, but not twice, while Bowlin was heard over the audio stating, I can't breathe. The Smith case says non-violent detainee has the right to be free from tasing for mere non-compliance, if there was even any non-compliance. Here, Mr. Bowlin was non-violent, posed no security risk. Officers had control of him. He was handcuffed face down on the floor. The Edwards case clearly established that the use of force against a pretrial detainee who was not resisting or being aggressive was unconstitutional under the Fourth and Eighth Amendments. That was actually a case argued by opposing counsel here, so he's well aware of the law on that. Here, Bowlin was non-violent, posed no security risk, and officers had control of him. The Franklin case, cited by appellants, totally inapplicable here. It doesn't apply because it dealt with a plaintiff who was on drugs, he was fighting with other inmates, he was actively resisting, and he was challenging those deputies to fight. What about the fact that your man wouldn't give up his hands and said, do it as many times as you effing want, according to the audio? Wouldn't that be a basis to use some force? It certainly, certainly the video evidence would suggest when he was taken to the ground, he was handcuffed. So this issue with he wouldn't give up his hands or where his hands were at the time is in dispute, and I think a jury needs to determine whether or not that fact is true or not. Hold on, the dispute is about whether he was handcuffed? Is that what you're saying? I believe the testimony, if I understand your question, the testimony of an officer was he wouldn't give up his hands. Right, and you're saying there's a dispute about whether he was already handcuffed at that moment? Whether that was even true. So our dispute would be that it wasn't true. What wasn't true? That he wasn't giving up his hands, that he wasn't resisting, and that there was no need to tase him. So that would be the response. That he couldn't give up his hands? That he was handcuffed at the time. So he couldn't give up his hands? He couldn't give up his hands, and the fact that they're saying it was a basis to tase him. So you dispute the facts then? That's a dispute of facts. That's a factual dispute on whether or not that's true. What the lower court said was based upon the video, it was uncertain whether he was complying. What's the evidence that he was handcuffed? I thought the whole point was they were trying to get him handcuffed. That's why they took him down. Is there any evidence that he was handcuffed? I mean, you can't, I don't know if you can create a dispute just by saying theoretically they could have taken him down while he was already handcuffed if there's no evidence that he was handcuffed. Yeah, my understanding was when he came into booking, he started out being handcuffed. I believe they handcuffed him, put his hands on the wall, and then started to handcuff him again. And at that point in time, he was tackled, either a hand in handcuff or two hands or no hands in handcuffs, and 12 officers got on the top of him. And so we would dispute any sort of contention that he was refusing to give up his hands, therefore justifying the use of the taser. I understand, but do you think the district court assumed that he was handcuffed at that time? I don't recall that. It's true that if the district court assumes a fact, we don't have jurisdiction to go behind that, but I didn't recall the district court saying that at this time during this tasing incident, he was already handcuffed. I believe you're correct in that assessment. Okay, all right. We'll take a look at it. Go ahead. So in any event, noncompliance in the situation, mere noncompliance is not a basis to tase him once, albeit two times. The second incident happens two to five minutes later in another booking cell. That one, which this court just addressed, was approximately four to five officers escorted Mr. Boland over into booking cell three, told him to get onto his knees. He was at the back of the cell on his knees with his hands against the wall as ordered. Lawyer warns Boland if he disobeys an order, he would be shot. It does appear from the video that Mr. Boland attempted to stand up in a non-aggressive stance with his hands in the air. As I believe Judge Sheppard or maybe Judge Erickson noted, I think it was Judge Erickson, the four or five other officers were outside of the cell. He was in the cell. Half of his body was in the cell. And he deployed four pepper balls in less than six seconds at Mr. Boland. The Tatum case held that pepper spray is a significant use of force. It can cause more than temporary pain. Tasers and pepper spray are co-equals on the use of force. And that at that point, I don't believe there's anything in the record that identifies what a security risk was. I believe Mr. Owens attempted to argue about lunging. I believe there is some case law that says had he lunged, maybe that force would have been reasonable. But under these circumstances. Didn't Judge Brooks say, I mean, I think his opinion specifically said that Boland's turn stood facing Loya in a position of surrender with his hands raised over his head and that he was not walking towards the deputies contrary to what Deputy Golden said. And isn't that just the epitome of a question of fact that the judge made the findings of fact. And that's no longer anything for us to talk about, because we have no jurisdiction over it. That is correct, Your Honor. And so on that basis, I do not believe there was a security threat. I believe the deployment of the pepper ball was purely punitive, which is not authorized or is not allowed. But once again, what we believe after that point is not really relevant. Because the question that has relevance to that point is the fact question. Is it really a fact question? And what you have is officer saying X. That is, he took a step towards me. Judge saying, I reviewed all the evidence, looked at the video, and I find that he stood in a position of surrender, turned and faced Officer Loya. Officer Loya was standing in the door frame and had the opportunity to escape and did not. Period. End of argument. That whatever anybody draws after that about the shooting of the pepper balls, isn't that beyond? I mean, there's a disputed material fact questionnaire, isn't there? Yes. I think the second step that the court has to consider was the force used excessive in violation of Constitution. Was it clearly established? Well, isn't it a debatable proposition if a person standing in the position of surrender facing you and you shoot pepper spray at his face? Is there really a question whether that's an unconstitutional violation? There's not in my mind, Your Honor. And so I'll move on to Mr. Wilkins. Well, there's actually one more use of force by Loya, and that is in the booking cell again at that time when he used force again by delivering two knee strikes to the back of Boland's thigh. And he was commanded to lay down on the ground where deputies were going to take off his handcuffs. I believe there are some cases out there about removing handcuffs. Again, you have to outline what the safety concern is that requires the use of handcuffs. You can't just use knee strikes because he won't comply to take off his handcuffs. There has to be some security reason to even remove those handcuffs at that point in time. And so, again, it's just added on. And I believe that is a constitutional violation as well. Regarding Wilkins, he slammed him to the ground. And that's on the video. It appears that Boland put his hands on the wall, put his right hand on the wall, but not the left. And Wilkins admits he spun him, did a takedown, and slammed him to the wall. And so we see that in McIntrust, a slam is not allowed. And Kohler and the final one, which is Kohler and Franks, they both used knee strikes and tasing. Again, cannot be punitive. Thank you, Your Honor. We would ask that the lower court's opinion be affirmed. Thank you. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted, and the court will file a decision in due course.